UNITED STATES DISTRICT COURT
Middle District of Pennsylvania

JAMES TINDOL,
Petitioner,

v.

[WARDEN],
Respondent.

Civil Action No 4:26-CV-01429

FILED
WILLIAMSPORT

AUG 17 2026

PER EA
DEPUTY CLERK

PETITIONER'S TRAVERSE TO RESPONDENT'S RESPONSE

Petitioner James Tindol, through this Traverse, respectfully replies to Respondent's assertion that he is categorically ineligible to earn First Step Act ("FSA") Time Credits pursuant to 18 U.S.C. § 3632(d)(4)(D)(lviii).

I. Respondent Has Not Established That Petitioner Falls Within the Narrow Statutory Exclusion

Respondent argues that Petitioner is automatically excluded from earning FSA Time Credits because he is serving a sentence under 21 U.S.C. § 841. However, Congress did not exclude every conviction under § 841. Rather, Congress excluded only a narrow class of convictions specifically identified in 18 U.S.C. § 3632(d)(4)(D)(lviii).

Respondent's argument incorrectly assumes that Petitioner's conviction automatically falls within that exclusion. It does not.

Petitioner did not receive the statutory enhancement requiring proof that "death or serious bodily injury resulted from the use of such substance." Had Petitioner been convicted of that enhancement, Congress required the sentencing court to impose a mandatory minimum sentence of 240 months' imprisonment pursuant to 21 U.S.C. § 841(b)(1)(C). Instead, Petitioner received a sentence of 120 months' imprisonment, demonstrating that the enhancement was neither imposed nor made an element of Petitioner's conviction.

The Government therefore improperly conflates Petitioner's statute of conviction with the separate statutory enhancement referenced in § 3632(d)(4)(D)(lviii). Congress did not exclude every defendant convicted under § 841. It excluded only those convictions that satisfy the specific statutory criteria enacted by Congress.

The Supreme Court has consistently instructed that statutory exceptions must be applied according to their plain language. Nothing in the First Step Act authorizes the Bureau of Prisons ("BOP") to expand Congress's carefully drafted exclusions beyond the offenses specifically enumerated.

Accordingly, Respondent has failed to establish that Petitioner falls within the narrow statutory exclusion.

II. Eligibility Must Be Determined From the Offense of Conviction

The Fourth Circuit's decision in Valladares v. Ray, 130 F.4th 74 (4th Cir. 2025), confirms that First Step Act eligibility turns upon the offense of conviction not upon allegations, underlying conduct, or administrative characterizations adopted by the Bureau of Prisons.

In Valladares, the Fourth Circuit rejected the BOP's attempt to deny First Step Act Time Credits based upon an expansive reading of § 3632(d)(4)(D). The court emphasized that Congress chose specific offenses that disqualify inmates from earning credits and that the Bureau lacks authority to enlarge those statutory exclusions beyond the convictions actually established.

That same principle applies here.

Respondent repeatedly characterizes Petitioner's conviction as "Distribution of Fentanyl Resulting in Death." However, Petitioner's sentence demonstrates otherwise. If Petitioner had actually been convicted of the enhancement requiring proof that death or serious bodily injury resulted, the sentencing court would have been required to impose the mandatory minimum sentence prescribed by Congress. Instead, the court imposed a sentence of only 120 months.

The Government cannot rely upon allegations or descriptions of conduct to transform Petitioner's conviction into one carrying an enhancement that was never imposed. Under Valladares, this Court must examine the actual offense of conviction rather than the Bureau's characterization of Petitioner's case.

III. The Bureau of Prisons May Not Expand Statutory Disqualifications

Likewise, Lallave v. Martinez, 635 F. Supp. 3d 173 (E.D.N.Y. 2022), reinforces that the BOP must faithfully implement the First Step Act according to the language enacted by Congress. Because Congress expressly identified only certain convictions as disqualifying, the Bureau may not enlarge those exclusions through internal policy or administrative interpretation.

The First Step Act was enacted to encourage inmates to participate in evidence-based recidivism reduction programming and productive activities. Congress intentionally limited the categories of inmates who are excluded from earning time credits. Those exclusions must therefore be construed narrowly.

Respondent's interpretation effectively expands the statutory exclusion by treating Petitioner's conviction as though it included an enhancement that was not imposed. Nothing in the First Step Act authorizes such an expansion.

IV. The Bureau's Administrative Determination Cannot Override the Statute

Respondent further relies upon a February 19, 2025, BOP determination finding Petitioner ineligible for First Step Act Time Credits.

However, an internal BOP classification cannot substitute for judicial interpretation of a federal statute. Whether Petitioner's conviction satisfies the requirements of § 3632(d)(4)(D)(lviii) is a question of statutory interpretation reserved for this Court.

The Bureau's conclusion is entitled to no deference where it conflicts with the plain language of Congress or rests upon an erroneous characterization of Petitioner's conviction.

V. Respondent Has Failed to Demonstrate That Petitioner Is Statutorily Ineligible

Respondent has produced no evidence establishing that Petitioner was convicted of the enhancement referenced in § 3632(d)(4)(D)(lviii). Instead, Respondent simply labels Petitioner's offense as one "resulting in death" while ignoring the fact that Petitioner's sentence was 120 months, not the mandatory 240-month sentence required had the enhancement actually been imposed.

The distinction is critical. Congress did not make every § 841 conviction ineligible for First Step Act Time Credits. Rather, Congress limited the exclusion to specific convictions involving the statutory enhancement. Because Petitioner's conviction did not include that enhancement, Respondent has failed to establish that the exclusion applies.

The Court should therefore reject Respondent's expansive interpretation of the statute and order the Bureau of Prisons to calculate Petitioner's First Step Act Time Credits in accordance with the plain language of 18 U.S.C. § 3632(d)(4)(D).

CONCLUSION

For the foregoing reasons, Petitioner respectfully requests that this Court reject Respondent's interpretation of 18 U.S.C. § 3632(d)(4)(D), grant the Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241, order the Bureau of Prisons to recalculate Petitioner's First Step Act Time Credits, and grant such other relief as the Court deems just and proper.

Footnotes

1. Valladares v. Ray, 130 F.4th 74 (4th Cir. 2025) (holding that eligibility for First Step Act Time Credits turns on the offense of conviction and declining to extend the statutory exclusion beyond Congress's chosen language).

2. Lallave v. Martinez, 635 F. Supp. 3d 173 (E.D.N.Y. 2022) (holding that the Bureau of Prisons must apply the First Step Act according to its plain language and may not expand statutory exclusions through administrative interpretation).
3. Taylor v. United States, 495 U.S. 575 (1990) (explaining that, where Congress makes legal consequences depend upon a conviction, courts generally examine the elements of the offense of conviction rather than the underlying factual allegations).
4. Mathis v. United States, 579 U.S. 500 (2016) (reaffirming the elements-based approach when determining the legal consequences of a prior conviction).

Respectfully submitted,

James Tindol
Petitioner, Pro Se

TRULINCS [redacted] Unit: LEW-L-A

---

Yet the BOP's own implementing regulation at 28 C.F.R. Part 523, Subpart E, replaced Congress's "shall" with "may" providing that the Bureau "may apply" FSA Time Credits toward prerelease custody when criteria are satisfied. That regulatory sleight of hand swapping a mandatory term for a permissive one was the target of the ACLU's class action lawsuit filed in January 2025, which alleged that the BOP was "ignoring this statutory command" by not transferring all eligible prisoners when their time credits equaled the remaining time on their sentences.

Another issue is that of "crossover credits" the application of earned FSA credits to serve portions of time that the SCA would otherwise govern. Section 3624(g)(10) explicitly provides that the time limits under the SCA's § 3624(b) and (c) "shall not apply to prerelease custody" under § 3624(g). In other words, once a prisoner's FSA credits trigger a § 3624(g) transfer obligation, the BOP cannot cap the prerelease period at the SCA's six-month or twelve-month ceilings. The FSA transfer pathway is independent of, and not limited by, the SCA. Courts have confirmed this stacking authority repeatedly and it is precisely what Director Marshall's June 17 directive sought to operationalize at the institutional level.

The practical consequence of the BOP's failure to honor this distinction is significant. A prisoner who has earned, say, 400 days of FSA credits sits in a different legal position than one awaiting SCA placement. The former is entitled, as a matter of statutory mandate, to transfer when those credits equal the remainder of their sentence. The latter remains subject to BOP discretion. When institutions treat § 3624(g)-eligible inmates as though they were merely awaiting discretionary SCA placement and when wardens tell prisoners that the BOP "is not legally required" to grant prerelease placement they are not just disregarding Director Marshall's memo. They are misrepresenting federal law.

Valladares v. Ray, 130 F.4th 74 (4th Cir. Feb. 25, 2025), reversed a district court's denial of FSA eligibility to an inmate whose conviction involved a drug-related death. The Fourth Circuit held that the FSA's ineligibility provision applies only to those convicted of the death-resulting enhancement element not to those whose underlying conduct involved a death without that conviction. Because the government had not charged or proven that enhancement at sentencing, the inmate was entitled to earn time credits. The ruling reflected the circuit court's broader conclusion that FSA credits "can be applied toward earlier placement in pre-release custody or supervised release," rejecting the BOP's narrow construction.

In Martin v. Phillips, No. No. 2:25-cv-00687 (E.D. Cal. Mar. 7, 2025), the court granted a temporary restraining order directing the BOP to transfer back to prerelease custody an inmate who had been removed from a halfway house due to an unresolved immigration detainer. The court rejected the BOP's position that an ICE detainer categorically barred prerelease placement, a position that courts would repeatedly reject throughout 2025.

And in Crowe v. BOP (D.D.C., decided June 9, 2025), the federal court reviewed a class action challenging the BOP's systematic failure to transfer eligible inmates to prerelease custody on time. It noted that after the suit was filed, the BOP transferred named plaintiff Crowe to an RRC on January 15, 2025, and moved another to home confinement on his FSA Conditional Placement Date a pattern the court observed of the BOP mooting individual cases by acting only after litigation commenced, rather than proactively complying.

Post-memo, in Williams v. Warden, FCI Berlin, 2025 WL 2207024 (D.N.H. Aug. 4, 2025), a lawful permanent resident who had been released to a halfway house in Miami, was returned to prison after the BOP issued a January 2025 memorandum effectively barring noncitizens with immigration detainers from prerelease custody. The court granted his habeas petition and ordered his immediate return to prerelease custody, holding that the BOP "had no discretion to disregard the statute's command and could not rely solely on an immigration detainer to deny prerelease placement," Finding that the First Step Act's language is mandatory and that the BOP cannot create additional exclusions not written by Congress. The BOP subsequently applied Williams's time credits and transferred him to home confinement in Miami.

See also, Adepoju v. Scales, No. 3:25-cv-00245 (E.D. Va. May 14, 2025):in which Judge Lauck held the BOP's actions were "plainly unconstitutional" and "ultra vires" beyond the agency's lawful authority, Magana-Herrera v. Warden, FCI Fort Dix, No. 1:25-cv-05848 (D.N.J. Oct. 10, 2025), which argued that the BOP was ignoring Director Marshall's own May and June 2025 memoranda mandating immediate placement of eligible inmates in home confinement, and .Gonzalez v. Herrera, 151 F.4th 1076 (9th Cir. Aug. 2025), where the Ninth Circuit reversed the district court and held that FSA earned time credits, read according to the plain text of 18 U.S.C. § 3632(d)(4)(C), must be applied to reduce the length of a term of supervised release not merely to accelerate the date on which an inmate transfers from prison to supervision.. The decision created an immediate circuit split; the Second Circuit, in Rivera-Perez v. Stover (decided March 26, 2026), held the opposite. That deepened the circuit split between the Second, Fourth, and Fifth Circuits on one side and the Ninth Circuit on the issue, making it a likely candidate for Supreme Court review.

Womelsdorf (Tindol)
227 Robert St.
Nanticoke, PA 18634

RECEIVED
WILLIAMSPORT

AUG 17 2026

PER EA
DEPUTY CLERK

DOUGLAS WOMELSDORF
(570) 814-7677
THE UPS STORE #5956
201 S BLAKELY ST
DUNMORE PA 18512-2203

1 LBS 1 OF 1
SHP WT: 1 LBS
DATE: 14 AUG 2026

SHIP TO:
US COURTHOUSE AND FEDERAL OFFICE
STE 218
240 W 3RD ST

WILLIAMSPORT PA 17701-6438

PA 177 0-13

UPS GROUND
TRACKING #: 1Z 5W0 W46 42 7988 2531

BILLING: P/P
SIGNATURE REQUIRED

MMZORJ1XUJ33K ISH 13.00C BIXOLON 20.6V 06/2026

US Courthouse and Federal Office Bldg.
240 West 3rd Street
Suite 218
Williamsport, PA 17701

The UPS Store Smart Label
Tracking #
1Z5W0W4642798 8 2531

US COURTHOUSE AND FEDERAL OFFIC
240 W 3RD ST
STE 218
WILLIAMSPORT PA 17701

P: BLUE S: LEFT I: LKH
31 – 2384
1Z5W0W46427988 2531
X
VR11CRJ PAWLL216UDC AUG 17 07:06:37 2026
US 1770 HIPPS 26.3.0 2T411R